IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROSA PEREZ, et. al,                    :        Case No. 4:07-CV-02291
                    Plaintiffs         :
                                       :
        v.                             :        (Judge McClure)
                                       :
BOROUGH OF BERWICK,                    :
et. al.                                :
                    Defendants.        :

**MEMORANDUM**

April 28, 2009

**BACKGROUND:**

On December 19, 2007, plaintiffs, Elvis Perez and Rosa Perez, individually, and on behalf of minors William Perez and Larry Perez, instituted this civil action by filing a complaint. On September 2, 2008, plaintiffs filed an amended complaint. Defendants are the Borough of Berwick, Columbia County, Heather Rood, Troy Maneval, Roger Bodwalk, Steve Levan, Greg Martin, Christopher Wilson, Tiffany Panetta, Patrick Cawley, Kimberly Mullings, David Christino, and two John Doe Agents of the Bureau of Immigration and Customs Enforcement ("ICE").

Plaintiffs allege in their complaint Illegal Entry in violation of 42 U.S.C. § 1983 against all defendants (Count I), Illegal Search in violation of 42 U.S.C. §

1

1983 against all defendants (Count II), Illegal Seizure in violation of 42 U.S.C. § 1983 against all defendants (Count III), Due Process violation of 42 U.S.C. § 1983 against all defendants (Count IV), violation of 42 U.S.C. § 1983 against all defendants (Count V), violation of 42 U.S.C. § 1981 against all defendants (Count VI), violation of 42 U.S.C. § 1985(3) against all defendants (Count VII), violation of 42 U.S.C. § 1986 against all defendants (Count VIII), violation of 42 U.S.C. § 1982 against all defendants (Count IX), a Bivens claim against defendants Cawley, Mullings, Christino, John Doe 1 and John Doe 2 (Count X), a Monell claim against the Borough of Berwick (Count XI), and a Monell claim against Columbia County (Count XII).

On November 10, 2008 defendants Columbia County and Tiffany Panetta filed a Motion to Dismiss the Amended Complaint as to them. (Rec. Doc. No. 26). They filed their supporting brief on November 20, 2008.  (Rec. Doc. No. 30). Plaintiffs were granted an extension of time to file their opposing brief, which was then timely filed on January 5, 2009.  (Rec. Doc. No. 34).  Defendants filed their reply brief on January 14, 2009 (Rec. Doc. No. 35); thus the matter is ripe for disposition.

Now therefore, for the following reasons, we will deny defendant Panetta's motion to dismiss and will deny without prejudice defendant Columbia County's

motion to dismiss.   We will grant plaintiffs leave to amend their amended

complaint as to their Monell claim.

## DISCUSSION:
### I.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), the court must view all allegations stated in the complaint as

true and construe all inferences in the light most favorable to plaintiff.  Hishon v.

King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183

(3d Cir. 1993).  In ruling on such a motion, the court primarily considers the

allegations of the pleading, but is not required to consider legal conclusions alleged

in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court

considers whether plaintiff is entitled to offer evidence to support the allegations in

the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A

complaint should only be dismissed if, accepting as true all of the allegations in the

complaint, plaintiff has not pled enough facts to state a claim to relief that is

plausible on its face.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960

(2007).

In considering a Rule 12(b)(6) motion, we must be mindful that federal

courts require notice pleading, as opposed to the heightened standard of fact

pleading. <u>Hellmann v. Kercher</u>, 2008 U.S. Dist. LEXIS 54882, 4 (W.D. Pa. 2008). Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964, (2007) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it. <u>Hellmann</u>, 2008 U.S. Dist. LEXIS at 4-5. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. <u>Twombly</u>, 127 S.Ct. at 1965.

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." <u>Id.</u> at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." <u>Id.</u> at 327.

4

## II. Allegations in the First Amended Complaint

Taking as true all of the allegations in the first amended complaint, the facts are as follows. Rosa Perez, Elvis Perez, and Rosa's two children, William Perez and Larry Perez were residing at 1207 Fourth Avenue, Berwick on March 21, 2007. William and Larry are minors; Larry has cerebral palsy. At four a.m. Rosa and Elvis were awakened by the sound of pounding at the front door. Rosa opened the door slightly, and was pushed aside by some of the defendants who swarmed the living room. Twelve law enforcement officers entered the home, all but three of whom wore black masks covering their faces. No plaintiff gave consent to enter, search or seize persons or property in the home.

Elvis asked if the officers had a search warrant. Defendants did not answer the question, and no search warrant was produced. Elvis was handcuffed and was asked to produce his green card. Elvis told the officers he is a United States citizen. The officers asked for proof, and Elvis provided a birth certificate and social security card, which were taken by an ICE agent, and have yet to be returned. A police officer told Elvis that there were two outstanding bench warrants for his arrest for traffic violations from August 2006. Elvis was never shown a bench warrant.

A police officer asked the other plaintiffs for their green cards, and an ICE

agent told plaintiffs ICE had received a tip that there were illegal aliens residing at that residence.  Defendants were asking for Eric and Luis Meniogia [sic][1].  The Perez's explained that they did not know the Meniogias and the Meniogias had never lived there.  A police officer also asked Elvis if Elvis's brother, Jose, had immigration papers, and instructed Elvis to tell Jose, who was not present during the raid, to bring his immigration papers to the police station for review.  Defendants ransacked the house and damaged property during their search.

Larry, Rosa's child with cerebral palsy, was very upset by the defendants.  He was in his bed crying, and officers refused Rosa's first request to move to comfort her son.  Larry has suffered from emotional distress because of these events.  His teacher reported that he was very upset the next day at school.  Larry also is now frightened of uniformed law enforcement officers and anyone knocking on the front door.

Elvis Perez was taken into custody, detained, and questioned.   Apparently, Elvis was not in Pennsylvania at the time of the traffic violations, had no knowledge of them, and has since been acquitted of the charges.

## III.  Analysis

[1]Defendants indicate the name is Mayorga, not Meniogia.

Defendants Columbia County and Tiffany Panetta, a parole officer with the Columbia County Probation Department, filed the instant motion to dismiss. These defendants assert that a bench warrant for arrest was issued by a Court of Common Pleas Judge for Erik Mayorga, who was listed as living at 1207 Fourth Avenue, Berwick - the same address as the plaintiffs. The bench warrant was issued because Mayorga failed to appear for an Advanced [sic] Rehabilitative Disposition ("ARD") revocation hearing. Defendants further assert that while at the home, after discovering the identity of Elvis Perez, they ran a search and found two outstanding bench warrants for traffic violations.

Defendants' motion to dismiss asserts that Panetta is entitled to absolute, quasi-judicial immunity and qualified immunity. Defendants assert that the 42 U.S.C. § 1986 claim is barred by the statute of limitations. Defendants further assert that plaintiffs failed to state a claim of conspiracy, and failed to state a Monell claim against defendant Columbia County. Defendants also moved in the alternative for a more specific complaint.

1.  Absolute, Quasi-Judicial Immunity

The Supreme Court has been "quite sparing" in recognizing absolute immunity; it is only justified when the danger of the officials' being deflected from effective performance of their duties is very great. See Burns v. Reed, 500 U.S.

478, 487 (1991), see also Forrester v. White, 484 U.S. 219, 230.  The Supreme

Court has refused to extend absolute immunity "any further than its justification

would warrant."  Burns, 500 U.S. at 487.   "The immunities for judges,

prosecutors, and witnesses established by [case law] have firm roots in the

common law." Mitchell v. Forsyth, 472 U.S. 511, 521 (1985) (holding that the

United States Attorney General is not absolutely immune from suit for damages

arising out of allegedly unconstitutional conduct in performing national security

functions).   "[T]he mere threat of litigation may significantly affect the . . .

performance of duty by actors in the judicial process."  Id. at 522.  "[M]ost of the

officials who are entitled to absolute immunity from liability for damages are

subject to other checks that help prevent abuses of authority from going

unredressed."  Id. at 523.

There is a long standing history in common law of granting absolute

immunity to judges, prosecutors, legislators, and jurors when acting within the

scope of their duties.  See Van de Kamp v. Goldstein, 129 S. Ct. 855 (2009).   "The

presumption is that qualified, rather than absolute immunity is sufficient to protect

government officials in the exercise of their duties."  Burns, 500 U.S. at 486-487.

The Supreme Court has "refused to extend [absolute immunity] any further than its

justification would warrant."  Id.  "Absent a tradition of immunity comparable to

the common-law immunity from malicious prosecution. . . we have not been inclined to extend absolute immunity from liability under § 1983." Id.

The Supreme Court has a three-step approach to determine if a particular official is entitled to absolute immunity. See Wyatt v. Cole, 504 U.S. 158 (1992). First the court considers if the official claiming immunity under § 1983 can point to a "tradition of immunity . . . so firmly rooted in the common law and . . . supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine'." Id. at 164. Next, we ask whether performance of the function poses a risk of harassment or vexatious litigation against the official. Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992). Finally, the court inquires whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. Id.

Defendant has not met the first prong of this three-step approach. Defendant has pointed to no history that a parole officer, acting in the capacity of an arresting officer, was historically granted immunity at common law. We are not aware of any precedent under which the Supreme Court has extended absolute immunity to a parole officer. Moreover, the Third Circuit has held that parole officers are immune from suit **when engaged in adjudicatory duties** and probation officers acting in their executive capacity are not entitled to absolute immunity, but only to

qualified immunity.  <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d Cir. 1986) (emphasis added).  Granting Panetta absolute immunity when she was functioning as an arresting officer, as opposed to engaging in an adjudicatory function, would distort and unduly expand the policy underlying absolute immunity.

It is entirely possible that acting as an arresting officer poses a risk of harassment or vexatious litigation. However, Panetta's risk is no more than that of the police officers also involved in the raid, who are not granted absolute immunity.  Police officers are traditionally only entitled, at most, to qualified immunity.  There is no reason to treat Panetta differently than the police officers, just because her title is different.  Panetta was acting in an arresting officer capacity the night she participated in the raid.  Finally, there is no alternative to a damage suit for wrongful conduct to address this conduct.

"The presumption is that qualified, rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  <u>Burns</u>, 500 U.S. at 486-487.   The Supreme Court has "refused to extend [absolute immunity] any further than its justification would warrant."  <u>Id.</u>  "Absent a tradition of immunity comparable to the common-law immunity from malicious prosecution. . . we have not been inclined to extend absolute immunity from liability under § 1983."  <u>Id.</u>   Because the Supreme Court has never extended

absolute immunity to an arresting officer; we see no reason to extend the doctrine in this situation to a parole officer acting, not in an adjudicatory function, but as an arresting officer.

Moreover, neither of the two Third Circuit cases cited by defendants to support their contention of absolute immunity is helpful. Defendants cite <u>Lepre v. Tolerico</u>, 156 Fed. Appx. 522 (3d Cir. 2005) (per curiam). What defendants fail to point out is that <u>Lepre</u> is not precedential authority. <u>See</u> Third Circuit Internal Operating Procedure 5.7. Moreover, there is very little explanation in <u>Lepre</u> as to why absolute immunity was granted to defendants. However, according to his complaint, Lepre was picked up at 4:50 p.m. in the Lackawanna County Prison Library (Civ. No. 3:CV-98-0030 Rec. Doc. No. 1). Therefore, <u>Lepre</u> seems to be a routine execution of a bench warrant. In the case at hand, however, the officers did not act routinely in executing a bench warrant, but conducted a raid by twelve officers in the middle of the night at plaintiffs' home. Thus, <u>Lepre</u> is neither binding nor persuasive authority.

Defendants only cite to one other Third Circuit case to support their contention of absolute immunity: <u>Lockhart v. Hoenstine</u>, 411 F.2d 455 (3d Cir. 1969). Defendants extrapolate the holding of <u>Lockhart</u> too far. In <u>Lockhart</u>, the Prothonotary of the Superior Court of Pennsylvania was ordered by the

Pennsylvania Superior Court not to accept filings from Sylvester Lockhart.
Lockhart sued the prothonotary, who was granted immunity by the Third Circuit
because his actions were taken pursuant to the Superior Court's Order.  In
Lockhart, the prothonotary was following a specific court order.  Here, the
defendants took a routine bench warrant for a non-violent offender who missed a
hearing, and imprudently decided to use that as justification for a middle of the
night raid involving twelve officers, including ICE agents.

For all of the foregoing reasons, we will not extend absolute immunity to
defendant Panetta in this situation.

2.  Qualified Immunity

Saucier v. Katz mandated a two-step analysis concerning qualified
immunity: first, taken in the light most favorable to the party asserting the injury,
do the facts alleged show the officer's conduct violated a constitutional right; and
second whether that right was clearly established.  533 U.S. 194, 201 (2001).  "The
contours of the right must be sufficiently clear that a reasonable official would
understand that what he is doing violates that right."  Id. at 202.

Earlier this year, the Supreme Court held that Saucier's  "rigid order of
battle" is not a mandatory requirement. Pearson v. Callahan, 129 S.Ct. 808 (2009).
Lower courts can use their discretion to decide which of the two prongs to consider

first.  Id. at 818.

The right to be secure in one's own home against unreasonable searches and seizures is a clearly established right.  Payton v. New York, 445 U.S. 573 (1980).  "[A]n entry to arrest and an entry to search for and seize property implicate the same interest in preserving the privacy and the sanctity of the home, and justify the same level of constitutional protection. Id. at 588.  "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  Id. at 603.

We address initially the first prong of Saucier; that is, did the nighttime entry into the home constitute an unreasonable search in violation of the Fourth Amendment?[2]

"The time of a police search of an occupied family home may be a significant factor in determining whether, in a Fourth Amendment sense, the search is "unreasonable.""  United States ex rel. Boyance v. Myers, 398 F.2d 896, 897 (3d

_____

[2]We follow the lead of the Eastern District of Pennsylvania, in finding here that, police officers relying on a facially valid warrant with, unbeknownst to officers, an incorrect address for the subject, without more, would not cause the defendants to lose the cloak of qualified immunity. See Fullard v. City of Philadelphia, 1996 U.S. Dist. LEXIS 5321 (E.D. Pa. 1996).   Here plaintiffs have not alleged that defendants were aware of any factual discrepancies which would have placed reasonable officers on notice that they were at the wrong address.

Cir. 1968). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer [issuing the warrant], not by a policeman, or Government enforcement agent." Id. at 899 citing Johnson v. United States, 333 U.S. 10 (1948).

A bench warrant is "[a] writ issued directly by a judge to a law-enforcement officer, esp. for the arrest of a person. . ." BLACK'S LAW DICTIONARY, (Bryan A. Garner, ed., West Group 2004). A search warrant is "[a] judge's written order authorizing a law-enforcement officer to conduct a search of a specified place and to seize evidence. . ." BLACK'S LAW DICTIONARY, (Bryan A. Garner, ed., West Group 2004). An arrest warrant is "[a] warrant, issued only by probable cause, directing a law-enforcement officer to arrest and bring a person to court." BLACK'S LAW DICTIONARY, (Bryan A. Garner, ed., West Group 2004).

The Pennsylvania Rules of Criminal Procedure contain just one rule on bench warrants, Rule 150. That rule does not specify whether nighttime entry into a home is authorized by the bench warrant. Because a bench warrant has elements of an arrest warrant (it is a judicially issued order to arrest) and a search warrant (it contains a recitation that there is probable cause to believe the subject resides at a specific location), we look to the Pennsylvania Rules of Criminal Procedure on both search warrants, Pa. R. Crim. P. § 200 et. seq., and on arrest warrants, Pa. R.

14

Crim. P. § 513 et. seq.  The rules on arrest warrants are silent as to whether

nighttime entry into the home is authorized to execute an arrest warrant.  The rules

for search warrants state that "[n]o search warrant shall authorize a nighttime

search unless the affidavits show reasonable cause for such nighttime search."  Pa.

R. Crim. P. § 203(F).  The rules also state "if a 'nighttime' search is requested (*i.e.*,

10 p.m. to 6 a.m.), state additional reasonable cause for seeking permission to

search in nighttime."  Pa. R. Crim. P. § 206(7).[3]  The bench warrant[4] issued for

Erik Mayorga was silent as to whether a nighttime search was authorized.

There are two cases that guide us in our analysis of the issue at hand. These

are  United States ex. rel. Boyance v. Myers, 398 F.2d 896 (3d. Cir. 1968), and

O'Rourke v. The City of Norman, 875 F.2d 1465 (10th Cir. 1989).

In Boyance, at 1:00 a.m. officers sought, and were granted a search warrant.

_____

[3]The Federal Rules of Criminal Procedure also define nighttime and daytime
as Pennsylvania does.  ""Daytime" means the hours between 6:00 a.m. and 10:00
p.m. according to local time."  Fed. R. Crim. P. § 41(a)(B).

[4]There are three bench warrants here.  The first is the bench warrant for Erik
Mayorga, that defendants use to justify their entrance into the home.  The other two
are bench warrants for Elvis Perez that officers found after Perez was detained in
his home.  The bench warrants for Elvis Perez seem to have been carried out in
accordance with Pennsylvania Rule of Criminal Procedure 150, as Perez was taken
without unnecessary delay for a hearing.  The issue, however, is with the bench
warrant for Erik Mayorga, that officers used to justify the initial entry into the
Perez home.

398 F.2d at 897. On the face of the warrant was printed "search in the daytime."

Id. Eleven officers went to the home and entered at 2:30 a.m. Id. The Third

Circuit said

> The time of a police search of an occupied family home may be a significant factor in determining whether in a Fourth Amendment sense, the search is "unreasonable." At common law, prior to the adoption of the Fourth Amendment, there was a strong aversion to nighttime searches.

Id. at 897 citing 2 Hale, PLEAS OF THE CROWN, Stokes & Ingersoll ed. 1847, 113;

Cooley, CONSTITUTIONAL LIMITATIONS, 7th Ed. 1903, 430; Voorhies v. Faust,

1922, 220 Mich. 155, 189 N.W. 1006, 27 A.L.R. 706; Commonwealth v. Hinds,

1887, 145 Mass. 182, 13 N.E. 397. "The significance of this aversion of the

common law to nighttime searches is underscored by the Supreme Court's

reminder that the search and seizure clause is properly 'construed in the light of

what was deemed an unreasonable search and seizure when it was adopted.'"

Boyance, 398 F.2d at 898, citing Carroll v. United States, 267 U.S. 132, 149

(1925).

The Third Circuit went on to explain that the first step is to determine if the

warrant's "simple and unambiguous language" authorized a daytime or a nighttime

search. Id. This is because "'[w]hen the right of privacy must reasonably yield to

the right of search is, as a rule, to be decided by a judicial officer, not by a

policeman, or Government enforcement agent.'" <u>Id.</u> at 899 <u>citing</u> <u>Johnson v.</u>
<u>United States</u>, 333 U.S. 10, 14 (1948). If the warrant is "silent as to the authorized
time of execution it might [] present[] a substantial problem of interpreting
language." <u>Boyance</u> 398 F.2d at 899. In <u>Boyance</u>, the officers requested a warrant
at 1:00 a.m., and the magistrate issued a search warrant specifying daytime entry.
<u>Id.</u> The Third Circuit found the logical inference was that the magistrate
determined that an immediate search before daytime was not necessary. <u>Id.</u> Thus,
the Third Circuit held that the search was constitutionally invalid. <u>Id.</u>

In <u>O'Rourke</u>, plaintiffs brought a 42 U.S.C. § 1983 claim against officers for
at 10:00 p.m. entry into their home. 875 F.2d 1465 (10th Cir. 1989). The warrant
was a bench warrant issued for contempt for failure to appear, the warrant was
issued three months prior to its execution, and it was not endorsed for nighttime
execution. <u>Id.</u> at 1467. Under Oklahoma law, a warrant for contempt would have
to have endorsement from the magistrate for nighttime entry. <u>Id.</u> at 1471. Like the
Third Circuit in <u>Boyance</u>, the Tenth Circuit began its analysis with the prescription
of <u>Carroll v. United States</u>, 267 U.S. 132, 149 (1925) that "the essential inquiry
when faced with challenges under the <u>Fourth</u> <u>Amendment</u> is whether the search or
seizure was reasonable – reasonableness is analyzed in light of what was
reasonable at the time of the <u>Fourth</u> <u>Amendment's</u> adoption. <u>Id.</u> at 1472. The

Tenth Circuit then described, in detail, the history of warrants in searches in England and early and contemporary United States history, including the history of intense aversion to nighttime home entry.  Id. at 1472-1475.  This resulted in the Tenth Circuit's holding that "[i]t is the absence of the neutral and detached magistrate's determination of the reasonableness of the nighttime search of the O'Rourke home which renders it unreasonable under the Fourth Amendment."  Id. 1475.

Although the bench warrant here[5] was silent as to whether nighttime search was authorized, it is clear that nighttime entry was not authorized on the face of the warrant.  Although the Third Circuit has stated in dicta that if the warrant is "silent as to the authorized time of execution it might [] present[] a substantial problem of interpreting language;" we find no problem interpreting the warrant here. See Boyance 398 F.2d at 899.  The Pennsylvania Rules of Criminal Procedure specify that in requesting a nighttime search (defined as 10 p.m. to 6 a.m.), the application for the warrant must "state additional reasonable cause for seeking permission to search in nighttime."  See Pa. R. Crim. P. 206(7).  Panetta has not alleged that a

---

[5]Although in reaching its decision, the court considered the bench warrant, which is presumably a matter of judicial record, but nevertheless outside the pleadings, the court did not convert the motion to a motion for summary judgment under Fed. R. Civ. P. 12(d) because the court denied the motion and plaintiff offered no challenge to the authenticity of the documents.

nighttime search was requested for the execution of the bench warrant, nor has she

asserted that additional reasonable cause was provided to the judge to grant

permission for a nighttime search.      Because the face of the warrant does not

recite that a nighttime search was requested and authorized by the judge in

accordance with Pa. R. Crim. P. 206(7), we interpret the warrant to mean that only

a daytime entry was authorized.  Otherwise, there would have been some evidence

of the "additional reasonable cause" required for a nighttime search on the warrant

to justify the approval of nighttime entry by the judge.

Our analysis does not end here.  We must next turn to the second prong of

Saucier: was the right against unauthorized nighttime home entry clearly

established?   The right to be secure in one's own home against unreasonable

searches and seizures is a clearly established right.  Payton v. New York, 445 U.S.

573 (1980). An unauthorized nighttime home search is constitutionally invalid.

See Boyance, 398 U.S. 899.  "The contours of the right must be sufficiently clear

that a reasonable official would understand that what he is doing violates that

right."  Id. at 202.  Payton has been good law for 29 years and Boyance for 41

years.  Moreover, Pa. R. Crim. P. 206(7), is clear in plain and unambiguous

language that nighttime is "10 p.m. to 6 a.m." and that permission must be sought

to search in the nighttime.  The statute is clear, and readily available to law

enforcement officers.  A reasonable officer would understand that 4 a.m. is nighttime, and that he or she would need to seek permission from the issuing authority to enter a home in the nighttime.

For all of the foregoing reasons, we find, under the extraordinary circumstances of the factual scenario here alleged, the officers' unauthorized nighttime home entry violated the <u>Fourth</u> <u>Amendment</u> and it was then clearly established that unauthorized nighttime home searches are constitutionally invalid. Therefore, we will deny Panetta the defense of qualified immunity.

<u>3.  Statute of Limitations on § 1986 Claim</u>

The text of 42 U.S.C. § 1986 provides for a one-year statute of limitations. The conduct at issue took place March 21, 2007.   Plaintiff's complaint was filed December 19, 2007.  The John Does were listed as members of ICE and the Berwick Police Department.  Plaintiffs filed an amended complaint September 2, 2008.  The amended complaint added, among others, defendants Panetta and Columbia County.

Federal Rule of Civil Procedure 15(c)(1)(C) provides that an amendment to a pleading changing the naming of a party relates back when the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading; and, if within 120 days of serving the summons and

complaint, the party to be brought in by amendment both received notice of the action so that it will not be prejudiced in defending on the merits, and also knew or should have known that the action would have been brought against it but for a mistake concerning the proper party's identity.

Defendants concede that the amendment asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. Defendants argue that they were not on notice of the original complaint, and they had no knowledge of the action.

The notice prong can be satisfied by actual notice or imputed[6] notice. <u>See Singletary v. Pa. Dep't of Corr.</u>, 266 F.3d 186, 189 (3d Cir. 2001). Notice can be imputed by the existence of a shared attorney between the original and proposed new defendant, or by an identity of interest between the parties. <u>See id.</u>

Plaintiffs do not argue which type of knowledge Panetta and Columbia County would have had, but argue that plaintiffs need discovery to determine if these two defendants were on actual or imputed notice.

Defendants make no mention of actual notice. Defendants do argue that

---

[6]Imputed notice falls under the doctrine of constructive notice. <u>Buchanan v. Reliance Ins. Co. (In re Color Tile, Inc.)</u>, 475 F.3d 508, 512 (3d Cir. 2007). Some courts refer to both imputed and constructive notice. This court will follow the lead of <u>Singletary</u> and will use the term imputed to refer to both types of notice.

they do not have a shared attorney and there is no identity of interests.  Defendants argue there is no identity of interests because no co-defendant works for Columbia County.  An employee/employer relationship serves the basis for imputing notice; but that is a narrow interpretation.  "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  Singletary, 266 F.3d at 197.

We agree with plaintiff's position that discovery is needed on this issue.  Because of the conjunctive "and" in Fed. R. Civ. P. 15(c)(1)(C), we need not reach the "knowledge" prong.  We will deny defendants' motion to dismiss plaintiffs' § 1986 claim.

4.  Conspiracy Claim

Notice pleading, as opposed to a heightened pleading standard, applies to  42 U.S.C. § 1985(3) claims.  See Evans v. Chichester Sch. Dist., 533 F. Supp. 2d 523 (E.D. Pa. 2008).  To state a claim under § 1985(3), plaintiffs must allege

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the person or property or the deprivation of any right or privilege of a citizen of the United States.

Id. citing Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

We believe plaintiffs have pled conspiracy sufficiently to survive a motion to dismiss. Therefore, we will deny defendants' motion to dismiss the conspiracy claim.

5. Monell

Monell v. Dep't of Soc. Servs., held that a municipality could be sued if an official government policy or custom caused a constitutional violation. 436 U.S. 658 (1978).

In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Hellmann v. Kercher, 2008 U.S. Dist. LEXIS 54882, 4 (W.D. Pa. 2008). Federal Rule of Civil Procedure 8 "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964, (2007) (citing Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it. Hellmann, 2008 U.S. Dist. LEXIS at 4-5. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts which, when taken as true, suggest

the required elements of a particular legal theory.  <u>Twombly</u>, 127 S.Ct. at 1965.

Plaintiff has done nothing more than recite the elements of a <u>Monell</u> action without facts to support a claim that Columbia County has a policy or custom of allowing constitutional violations.  Plaintiffs, in a footnote in their opposing brief, requested leave to amend their amended complaint to include other raids.  (Rec. Doc. No. 34 at 26 n. 5).  We will grant plaintiff leave to amend their <u>Monell</u> claim pursuant to Federal Rule of Civil Procedure 15(a)(2), and thus will deny Columbia County's Motion to Dismiss the Monell claim without prejudice.

<u>6.  Motion for a More Specific Statement</u>

We will deny defendants' request for a more specific statement.  Plaintiffs need discovery to determine which actions were taken by which defendants. Defendants' argument that "plaintiff's do not even indicate if Defendant Panetta wore a mask or if she did not wear a mask" is without merit.  Clearly, defendants are in the best position to know who did and who did not wear a mask the evening of the raid.

**CONCLUSION:**

We will deny defendant Panetta's Motion to Dismiss.  We will deny, without prejudice, Columbia County's Motion to Dismiss, while granting plaintiffs leave to amend their complaint with regard to their <u>Monell</u> claim.

s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROSA PEREZ, et. al,              :        Case No. 4:07-CV-02291
            Plaintiffs           :
                                 :
        v.                       :        (Judge McClure)
                                 :
BOROUGH OF BERWICK,              :
et. al.                          :
            Defendants.          :

**O R D E R**
April 28, 2009

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

1. The Motion to Dismiss of defendant Tiffany Panetta is DENIED.
(Rec. Doc. No. 26).

2. The Motion to Dismiss of defendant Columbia County is DENIED
without prejudice.  (Rec. Doc. No. 26).

3. Plaintiffs are GRANTED leave to amend their complaint with
regard to their <u>Monell</u> claim. Said amended complaint shall be filed on or before
May 15, 2009, or the complaint will be dismissed, with prejudice, as against
Columbia County.

4. Defendant Panetta is directed to file an answer to the amended

complaint on or before May 18, 2009.

      5.  Defendant Columbia County is directed to file a response to plaintiffs' newly amended complaint within 20 days of the service of the same.


                           s/ James F. McClure, Jr.
                          James F. McClure, Jr.
                          United States District Judge